```
```

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| JENNIE LEIGH FRYE,<br><br>    Plaintiff,<br><br>v.<br><br>LAUDERDALE COUNTY, ALABAMA;<br>JOHN FREEMAN, sued in his<br>individual and official<br>capacity as Administrator of<br>the Lauderdale County Detention<br>Center; and JOHN TOMLINSON,<br>sued in his individual and<br>official capacity as<br>Administrative Assistant for<br>Lauderdale County Detention<br>Center; BILLY TOWNSEND, sued<br>in his individual and official<br>capacity as the Sheriff of<br>Lauderdale County.<br><br>    Defendants. | Civil Action No. CV-98-S-0607-NW |



ENTERED
JUN 1 0 1998

## MEMORANDUM OPINION

Plaintiff Jennie Leigh Frye was arrested and taken to the Lauderdale County, Alabama Detention Center on March 9, 1996 "for failure to pay restitution on worthless checks." (Plaintiff's First Amended Complaint ¶ 10.) Plaintiff allegedly informed defendants prior to her incarceration that she suffered from a medical condition "which caused her to have seizures," and "gave defendants her medication and asked for a cell on the bottom floor" of the detention center. (*Id.* ¶ 12.) Plaintiff nevertheless was placed in a cell on the top floor of the center, and allegedly was refused medical attention when she claimed her condition was being aggravated. (*Id.* ¶ 13.) Frye claims she "passed out" and fell

while climbing the stairs to her cell on March 15, 1996; she "awakened with paramedics standing around her." (*Id.* ¶¶ 14, 15, 17.) After receiving treatment at a local hospital, Frye was returned to the detention center in a wheelchair. (*Id.* ¶ 16.) She claims to have requested treatment for "severe pain," presumably caused by injuries suffered in her fall, but all such requests allegedly were denied. Instead, John Freeman, administrator of the detention center, allegedly told plaintiff to "[g]et her fat ass out of the wheelchair, [because] there was nothing wrong with [her] but being lazy." (*Id.* ¶ 17.) Frye claims to have been diagnosed as suffering from "bulging discs," a condition that precipitates "aches in her head, neck, and back ...." (*Id.* ¶ 18.)

Frye raises two claims under 42 U.S.C. § 1983. First, she claims defendants demonstrated deliberate indifference to her serious medical needs, resulting in violation of her rights as a "pretrial detainee"[1] under the Eighth and Fourteenth Amendments to the United States Constitution. (*Id.* ¶¶ 19-24.) Second, she claims defendants' alleged failure to train and supervise detention

---

[1] Plaintiff repeatedly characterizes herself as a "pretrial detainee" (see, for example, the following paragraphs in her first amended complaint: 10, 11, 21, 23). That characterization should be contrasted to paragraph 10 of her amended complaint, however, where plaintiff alleges she "was arrested and taken to [the] Lauderdale County Detention Center ... for failure to pay restitution on worthless checks": i.e., a set of facts which implies that plaintiff previously had been tried and convicted for the state offense of negotiating worthless negotiable instruments (see Ala. Code §§ 13A-9-13.1 et seq.) and ordered to pay restitution to her victim(s) as a component of her state court sentence, or as a condition of a suspended/probationary sentence. This action nevertheless is at an early stage of its development, and the court feels sure that all such obscurities shall become clear with fuller development of the relevant facts.

2

center employees caused her to suffer physical injury in violation of the Eighth and Fourteenth Amendments. (*Id.* ¶¶ 25-35.)

The action presently is before this court on two motions: defendants' motion to dismiss plaintiff's complaint; and, plaintiff's motion to amend her complaint. Upon consideration of the pleadings and briefs, this court concludes plaintiff's motion to amend is due to be granted, and, defendants' motion to dismiss is due to be granted in part and denied in part.

## I. STANDARD FOR 12(b)(6) MOTION TO DISMISS

Under the liberal pleading requirements of the Federal Rules of Civil Procedure, plaintiff need only allege "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8(a), *Fed. R. Civ. P.* For purposes of a motion to dismiss, the factual allegations in the complaint must be taken as true. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.), *cert. denied*, 502 U.S. 810, 112 S. Ct. 55, 116 L. Ed. 2d 32 (1991). Dismissal is appropriate only where it is clear the plaintiff can prove no set of facts in support of the claims in her complaint. *Powell v. United States*, 945 F.2d 374 (11th Cir. 1991). Accordingly, this court may dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) only when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Executive*, 922 F.2d at 1539; *see also Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776, 90 L. Ed. 939 (1946).

3

## II. PLAINTIFF'S MOTION TO AMEND COMPLAINT

Plaintiff's motion to amend her complaint is an after-the-fact attempt by her attorney to correct many of the deficiencies noted by defendants in their motion to dismiss. The Eleventh Circuit instructs this court to allow plaintiff an opportunity to do so.

> A complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "[A] district court's discretion to dismiss a complaint without leave to amend is 'severely restrict[ed]' by Fed.R.Civ.P. 15(a), which directs that leave to amend 'shall be freely given when justice so requires.'" *Thomas v. Town of Davie*, 847 F.2d 771, 773 (11th Cir.1988) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (Former 5th Cir.1981)). Where it appears a more carefully drafted complaint might state a claim upon which relief can be granted, we have held that a district court should give a plaintiff an opportunity to amend his complaint instead of dismissing it. *See Friedlander v. Nims*, 755 F.2d 810, 813 (11th Cir.1985); *Dussouy*, 660 F.2d at 597-99.

*Bank v. Pitt*, 928 F.2d 1108, 1111-12 (11th Cir. 1991). This court finds that plaintiff's proposed, "first amended complaint" is more carefully drafted than her original pleading, and it states a claim upon which relief *might* be granted. Her motion for leave to amend therefore is due to be granted, and defendants' motion to dismiss accordingly shall be evaluated in juxtaposition to the allegations of the amended complaint.

4

### III. FREEMAN AND TOMLINSON'S MOTION TO DISMISS

#### A. Official Capacity Claims

Defendants Freeman and Tomlinson respectively occupy the positions of Administrator and Assistant Director of the Lauderdale County Detention Center. They seek dismissal of plaintiff's official capacity claims against them, because "such claims are barred by the Eleventh Amendment to the United States Constitution." (Defendants' brief at 2.)

Neither Freeman nor Tomlinson are considered "persons" subject to suit under § 1983, <u>when sued in their official capacities</u>. That result flows from *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989), where the Supreme Court held "that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Even so, an understanding of the rationale undergirding the *Will* holding, and thereby of its application to this case, requires some discussion.

To begin with, the Supreme Court has construed the Eleventh Amendment[2] as a bar to suits against a state in a federal forum, "unless that State has waived its immunity, ... or unless Congress has exercised its undoubted power under § 5 of the Fourteenth Amendment to override that immunity." *Will*, 491 U.S. at 66, 109

---

[2] The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

5

S.Ct. at 2309-10(citation omitted).[3]  The Court found "[t]hat Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity and so to alter the federal-state balance in that respect...." *Will*, 491 U.S. at 66, 109 S.Ct. at 2310.[4]  In addition, suits against an official acting in his or her official capacity impose liability on <u>the governmental entity</u> the official represents. *E.g., Brandon v. Holt*, 469 U.S. 464, 471-72, 105 S.Ct. 873, 877-78, 83 L.Ed.2d 878 (1985). "Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. ...

---

[3] On the other hand, the Supreme Court does not view the Eleventh Amendment as a bar to suits for prospective injunctive relief against state officials acting in their official capacity. *See, e.g.*, Parker v. Williams, 862 F.2d 1471, 1475 (11th Cir. 1989)(citing Edelman v. Jordan, 415 U.S. 651, 664, 94 S.Ct. 1347, 1356, 39 L.Ed.2d 662 (1974)). *See also* Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 n.10, 109 S.Ct. 2304, 2312 n.10, 105 L.Ed.2d 45 (1989), holding that "a state official in his or her official capacity, <u>when sued for injunctive relief</u>, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State'." (Emphasis added.) However, plaintiff does not seek prospective injunctive relief herein.

[4] In addition to its discussion of the Eleventh Amendment's impact upon the scope of § 1983, the *Will* court found that

> Congress did not intend to override well-established immunities or defenses under the common law. ... The doctrine of sovereign immunity was a familiar doctrine at common law. The principle is elementary that a State cannot be sued in its own courts without its consent." ... We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent.
>
> The legislative history of § 1983 does not suggest a different conclusion. ... Construing § 1983 as a remedy for "official violation of federally protected rights" does no more than confirm that the section is directed against state action — action "under color of" state law. *It does not suggest that the State itself was a person that Congress intended to subject to liability.*

*Will*, 491 U.S. at 67-68, 109 S.Ct. at 2310-11 (emphasis supplied)(citations omitted).

6

As such, it is no different from a suit against the State itself." *Will*, 491 U.S. at 71, 109 S.Ct. at 2312.

In that regard, the 1901 Constitution of the State of Alabama provides that county sheriffs are executive officers of the State.[5] *See Parker v. Amerson*, 519 So. 2d 442, 442-43 (Ala. 1987). Therefore, sheriffs enjoy Eleventh Amendment protection when they are sued in their official capacities for damages under § 1983. *Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990), *reh'g denied*, 925 F.2d 1471 (11th Cir. 1991). Furthermore, the close working relationship between sheriffs and those deputy sheriffs employed to work in the capacity of jailers, the limited control exercised over jailers by counties, and the possibility that a damage award against a jailer will be paid by state funds, require that Alabama jailers be considered "state officials entitled to Eleventh Amendment immunity when sued in their official capacities." *Lancaster v. Monroe County, Alabama*, 116 F.3d 1419, 1429-30 (11th Cir. 1997).

It follows from all of the foregoing that neither Administrator Freeman nor Assistant Director Tomlinson are considered "persons" subject to suit under § 1983, when sued in their official capacities, because Jennie Leigh Frye's claims against those persons in their <u>official capacities</u> are functionally

---

[5] Article V, § 112, Alabama Constitution (1901), provides: "The executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, <u>and a sheriff for each county</u>." (Emphasis supplied.)

7

equivalent to claims against the entity each official represents: the State of Alabama, which neither consented to this suit nor waived its Eleventh Amendment immunity. Accordingly, plaintiff's claims against those defendants in their official capacities are barred. *See Parker v. Williams*, 862 F.2d at 1476 n. 4 ("Eleventh Amendment bars the award of damages for past injuries because such damages would be paid out of state funds").

### B. Individual Capacity Claims

Freeman and Tomlinson also move to dismiss the claims asserted against them in their individual capacities. They claim plaintiff has failed to plead her claims with sufficient specificity, and they are entitled to qualified immunity under the allegations of her complaint. This court cannot find, at this early stage of the instant proceeding, that there is no set of facts upon which plaintiff could recover. Accordingly, the motion to dismiss the individual capacity claims against Freeman and Tomlinson is due to be denied.

### IV. LAUDERDALE COUNTY'S MOTION TO DISMISS

Lauderdale County moves to dismiss the claims made against it, because "Lauderdale County, Alabama, cannot be liable for the operation of the Lauderdale County Detention Center, as said operation was within the sole control of the Sheriff of Lauderdale County." (Defendant's brief at 6.) In her response, plaintiff concedes "[t]he claims against defendant Lauderdale County are due to be dismissed." (Plaintiff's brief at 3.) Yet, she retains

8

Lauderdale County as a defendant in her amended complaint. (Amended complaint ¶ 5.)

The Eleventh Circuit recently held that an Alabama county cannot be held accountable under 42 U.S.C. § 1983 for injuries sustained by a county jail inmate arising from the sheriff's management of the jail. *Turquitt v. Jefferson County*, 137 F.3d 1285, 1286 (11th Cir. 1998)(*en banc*). That holding is equally applicable to a county's liability for injuries befalling a "pretrial detainee" if, in fact, that is the status plaintiff occupied.[6] Accordingly, this court finds the claims against Lauderdale County, Alabama are due to be dismissed.

### V. SHERIFF BILLY TOWNSEND

Plaintiff represents to this court that she "has moved to amend [her] complaint to include Billy Townsend <u>in his individual capacity</u> as Sheriff of Lauderdale County." (Plaintiff's brief at 3 (emphasis supplied).) However, her complaint states "Townsend is sued in his individual <u>and official capacity</u> as the Sheriff of Lauderdale County." (Amended complaint ¶ 8 (emphasis supplied).) Defendants' motion to dismiss was filed before Sheriff Townsend was added as a party. Presumably, they would seek to have the claims against him dismissed on the same basis as the claims against Freeman and Tomlinson. This court accordingly finds *sua sponte* that the official capacity claims against Sheriff Townsend are due to be dismissed for the reasons discussed in part III.A of this

---

[6] *See* note 1 *supra*.

9

opinion. On the other hand, this court cannot find at this juncture in the suit that there is no set of facts under which plaintiff could recover against Sheriff Townsend in his individual capacity, and therefore will not dismiss those claims.

An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the 10th day of June, 1998.

_____
United States District Judge